# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| **ANTHONY T. BROWN, ET AL** | **CIVIL ACTION NO. 17-0798** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **CITY OF ALEXANDRIA, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court are two Motions for Summary Judgment (Record Documents 17 & 39) filed by defendant Southern Theatres, LLC ("Defendant"). Plaintiffs Anthony Brown ("Mr. Brown") and Bianca Brown ("Ms. Brown") (collectively "Plaintiffs") oppose the motions. See Record Documents 22 & 45. For the reasons set forth in the instant Memorandum Ruling, Defendant's Motions for Summary Judgment (Record Documents 17 & 39) are hereby **GRANTED**.

## FACTUAL BACKGROUND

Defendant operates the Grand Theatre in Alexandria, Louisiana ("the Theatre"). At all times relevant to this case, Michael Stevenson ("Stevenson") was employed by the Theatre as an usher and was tasked with keeping the building clean. See Record Document 1-5 at 3; see also Record Document 18-3 at 1. Plaintiffs attended movies at the Theatre on multiple occasions prior to May 21, 2016. Plaintiffs both stated in their individual depositions that Stevenson would speak to Ms. Brown each time they would go to the Theatre. See Record Document 18-1 at 36. According to Plaintiffs, this was because Ms. Brown and Stevenson had a pre-existing personal connection. Specifically, they went to church together in the past. See Record Documents 18-1 at 39 & 18-2 at 30.

In his deposition, Mr. Brown stated that during Plaintiffs' interactions with Stevenson at the Theatre, Stevenson would only address Ms. Brown and would not acknowledge Mr. Brown. See Record Document 18-1 at 42.

On May 21, 2016, Plaintiffs attended a movie at the Theatre. See Record Document 1-5 at 3. Upon entering the Theatre, Stevenson approached Plaintiffs and began speaking to Ms. Brown. Mr. Brown went to the concession stand. See Record Document 18-1 at 52. After Stevenson and Ms. Brown finished their conversation, Ms. Brown went to the restroom. See id. At this time, Mr. Brown approached Stevenson and engaged him in conversation. See id. at 42 According to Mr. Brown's deposition, the purpose of this conversation was to let Stevenson know that Mr. and Ms. Brown had been married for 18 years, and to ask Stevenson to acknowledge Mr. Brown's presence whenever he spoke to Ms. Brown in the future. See id. According to Mr. Brown, the two of them shook hands at the end of the conversation. See id. at 43. Plaintiffs then went to their movie.

After the movie ended, Plaintiffs began moving towards the Theatre's exit, but were "accosted" by Stevenson, who was standing in the doorway. Record Document 1-5 at 3. Stevenson "attempted to commence a conversation with Ms. Brown." Id. He told her that before the movie, Mr. Brown had accused them of having an affair. See Record Documents 18-1 at 58 & 18-2 at 65. Plaintiffs turned to walk away. See Record Document 1-5 at 3. Stevenson then "jumped in front of them" and became hostile. Record Document 1-5 at 3. He stated, "I'm a grown ass man and I'll talk to whoever [sic] the hell I want to talk to." Id.; see also Record Document 18-1 at 60. Stevenson then pushed Mr. Brown and "commenced attacking him, causing a fight to break out between them." Id. Ms.

Brown then yelled for help from the police officer who was working security at the Theatre. See Record Document 18-1 at 64. The police officer intervened to break up the fight. See id. Plaintiffs allege that the police officer engaged in excessive force and caused significant injuries to both of them during the course of his intervention. See Record Document 1-5 at 3 & 4.

Plaintiffs allege that Stevenson was hired by Defendant despite having a "demonstrable propensity for excessive force, violence, negligence, and other misconduct." Record Document 1-5 at 3. Plaintiffs have also submitted evidence on summary judgment showing that Stevenson had a criminal history at the time of his hiring, which includes a prior conviction for sexual battery. See Record Document 22-4.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 728. During this stage, courts must look to the substantive law underlying the lawsuit in order to identify "which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)

"Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A nonmovant cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). The court should not, however, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

## II. Vicarious Liability Claim

Plaintiffs did not raise a claim for the vicarious liability of Defendant in their complaint. Despite this failure, Plaintiffs raise the issue of vicarious liability in their opposition to Defendant's motion for summary judgment. See Record Document 22. Defendant argues that Plaintiff's failure to explicitly identify a vicarious liability claim in their complaint precludes their ability to seek relief under that theory. Although the Court

shares in Defendant's frustration over Plaintiffs' failure to explicitly include a vicarious liability claim, the Court also notes that, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 562 U.S. 521, 131 S.Ct. 1289, 1296 (2011). "Indeed, '[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used.'" Prudhomme v. Russell, 2018 WL 6928918 (W.D.La. 2018) (quoting Gearlds v. Entergy Servs. Inc., 709 F.3d 448, 452 (5th Cir. 2013)). Therefore, Plaintiff's vicarious liability claim is ripe for review by the Court at the summary judgment stage.

Louisiana Civil Code Article 2320 states, "Masters and employers are answerable for the damage occasioned by then-servants and overseers, in the exercise of the functions in which they are employed . . . ." Under this Article, "an employer can be held liable for an employee's tortious conduct only if the injuring employee is acting within the course and scope of his employment." Reyes v. Hornbeck Offshore Servs., L.L.C., 383 F. App'x 442, 444 (5th Cir. 2010). Four factors are to be considered in determining whether vicarious liability attaches: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. See Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405 (5th Cir. 2002) (citing Baumeister v. Plunkett, 673 So.2d 994 (La. 1996)). Although it is not true that all four factors must be satisfied for vicarious liability to attach, vicarious liability will not attach to an employer for an employee's intentional torts

when only the last two factors are satisfied. See Baumeister, 673 So.2d at 997. There must additionally be "some evidence that the intentional act was reasonably incidental to the performance of the employee's duties or that the tortious act was primarily employment rooted." Id. at 1000.

In this case, the last two factors are satisfied, as it is undisputed that the alleged intentional tort occurred on the premises of the Theatre during business hours. Thus, only factors (1) & (2) are at issue. Defendant argues that no evidence has been presented on summary judgment which gives rise to a genuine dispute of material fact as to the satisfaction of either of these two factors. The Court agrees.

In Wyatt v. Hunt Plywood Co., Inc., the United States Fifth Circuit Court of Appeals held that because two supervisors were "acting out of personal motives unrelated to their employment," the employer could not be held vicariously liable for their intentional acts under Louisiana tort law, despite the conduct occurring on the business's premises during business hours. 297 F.3d 405 (5th Cir. 2002). The incident at issue in this case arose because of a pre-existing, personal connection between Ms. Brown and Stevenson. Ms. Brown and Stevenson knew each other because they went to church together in the past. See Record Document 18-2 at 30. Stevenson would interact with Ms. Brown each time Plaintiffs would patronize the Theatre because he remembered Ms. Brown from their prior connection. See Record Document 18-1 at 36 & 38.

On the night of the incident, Mr. Brown had a discussion with Stevenson because he felt Stevenson should acknowledge him whenever he addressed Ms. Brown in the future. See Record Document 18-1 at 42. This discussion was of a personal nature and ultimately led to the altercation at issue in this case. When Stevenson confronted Plaintiffs

after their movie ended, he asked to speak with Ms. Brown to address the conversation that had occurred between he and Mr. Brown. He told Ms. Brown that Mr. Brown had accused them of having an affair. See Record Document 18-2 at 65. This resulted in the physical altercation between Mr. Brown and Stevenson which led, in turn, to the injuries alleged. See Record Document 19-1 at 60.

All the evidence presented on summary judgment shows that the conversation between Plaintiffs and Stevenson, and the resulting physical altercation, were purely personal and not employment related. Thus, there is no genuine dispute of material fact as to whether Stevenson was acting in the course and scope of his employment at the time of the incident, and Defendant is entitled to judgment as a matter of law. Therefore, Defendant's motion for summary judgment (Record Document 39) is **GRANTED**.

### III. Negligent Hiring, Training, and Supervision Claim

Louisiana law applies the duty-risk analysis to claims of negligent hiring, training, and supervision. See Roberts v. Benoit, 605 So. 2d 1032, 1041 (La. 1992). Thus, Plaintiffs must prove that Defendant's alleged negligence was a cause-in-fact of their harm, that Defendant had a duty to protect them from harm at the hands of Stevenson, that Defendant breached this duty, and that the risks to which Plaintiffs were exposed were within the scope of Defendant's duty. See id. (citing Mart v. Hill, 505 So. 2d 1120, 1122 (La. 1987)).

Louisiana has recognized that employers have a duty to "exercise reasonable care in hiring, retaining, and supervising employees." Id. However, the majority of the Louisiana appellate courts only apply the duty of reasonable care in hiring, training, and supervision to an employer who "hires an employee who in the performance of his duties

will have a 'unique opportunity' to commit a tort against a third party." Bloxom v. City of Shreveport, 103So. 3d. 383 (La. App. 2 Cir. 05/16/12); see also Kelley v. Dyson, 10 So.3d 283 (La. App. 5 Cir. 03/24/09); see also Harrington v. Louisiana State Board of Elementary and Secondary Education, 714 So.2d 845 (La. App. 4 Cir. 05/20/98). This "unique opportunity" requirement has also been adopted by the United States District Courts for the Western and Eastern Districts of Louisiana. See McKnight v. Madison Parish School Board, 2009 WL 1409853 (W.D. La. 2009); see also Olmeda v. Cameron International Corporation, 139 F.Supp.3d 816 (E.D. La. 2015).

Presumably, the "unique opportunity" requirement reflects a desire to limit liability for negligent hiring, training, and supervising to those employers who should exercise increased caution because of the nature of the employee's duties. In Harrington, the Louisiana Fourth Circuit Court of Appeal found that the duty to use reasonable care in hiring applied to the hiring of a college instructor, as a college instructor maintains a position of authority over his or her students. See 714 So. 2d at 851. In Jackson v. Ferrand, the same Court found that the duty to exercise reasonable care in hiring, training, and supervising applied to the Hilton Hotel, as its employees have access to guests' hotel rooms, which are "equivalent to a guest/visitor's home during the time the guest/visitor is staying at the hotel." 658 So.2d 691 (La. App. 4 Cir. 1995). There, the Court found that the hotel had a duty "check the criminal backgrounds of prospective employees." Id. Similarly, in Griffin v. Kmart Corporation, the Louisiana Fifth Circuit Court of Appeal found that Kmart had a duty to exercise reasonable care in hiring, training, and supervising an employee who would be working with and handling guns." 776 So.2d 1226 (La. App. 5 Cir. 2000).

In this case, it is only alleged that Stevenson was an employee of Defendant. See Record Document 1-5 at 3. Additionally, the only evidence presented on summary judgment related to Stevenson's employment is an affidavit from the General Manager at the Theatre, which states that Stevenson was employed as an usher and tasked with keeping the Theatre clean. Record Document 18-3. Therefore, nothing in Plaintiffs' factual allegations, or in the evidence presented on summary judgment, can be construed to indicate that Steven's employment created a "unique opportunity" for his alleged actions. See Olmeda v. Cameron International Corporation, 139 F.Supp.3d at 836 (granting the defendant's motion for summary judgment because the plaintiff failed to allege, and presented no evidence indicating, that the employee had a "unique opportunity" to inflict harm on the victim because of his employment).

Plaintiffs point to the fact that Stevenson had contact with patrons in his capacity as an usher. Record Document 22-3 at 10 & 11. Thus, it appears that Plaintiff would have the Court find that any job where an employee has access to patrons is one that presents a "unique opportunity" to commit a tort against third parties. This cannot be true. Jobs where employees have contact with patrons are anything but unique. Thus, something more must be required to trigger the duty of reasonable care and the resulting exposure to liability for negligent hiring, training, and supervision. Otherwise, the "unique opportunity" requirement would be superfluous and without meaning.

Plaintiffs also argue that by hiring Stevenson, a convicted criminal, Defendant "gave [Stevenson] a unique opportunity to commit wrongful acts against the patrons of the movie theatre." Record Document 22-2 at 1. Thus, Plaintiff would like the Court to take the employee's propensity for violence into account in its determination of whether

a "unique opportunity," and thus a duty, existed. It would not be appropriate to consider such evidence at this stage of the negligence analysis. As is shown by the cases cited above, the evidence relevant to the determination of whether a "unique opportunity" exists is evidence related to the employee's job, not evidence of the employee's personal characteristics or propensity for violence. Instead, this kind of evidence would be relevant to whether an existing duty was breached by hiring a person with a criminal history.

For these reasons, Defendant's Motion for Summary Judgment (Record Document 17) as to Plaintiff's negligent hiring, training, and supervision claim is **GRANTED**.

### IV. Failure to Protect from Criminal Activity of Employee Claim

Plaintiffs argue that Defendant is liable for its failure to protect Plaintiffs from Stevenson's alleged criminal activity. It is true that Louisiana courts have recognized a theory of liability for the failure to protect patrons from foreseeable criminal activity of third persons. See Posecai v. Wal-Mart Stores, 752 So.2d 762 (La. 11/30/1999). However, Plaintiffs have failed to bring any cases to the Court's attention where this theory has been applied to criminal activity committed by an employee of the defendant. Additionally, the Court has performed its own review of the case law and has found that cases applying this theory have dealt only with the duty to protect from the criminal activity of independent third parties, not employees.

When the perpetrator of the criminal activity is an employee of the defendant, the proper theory of liability is negligence in the hiring, training, and/or supervision of the employee. See Section III of this Memorandum Ruling. It is also worth noting that if the "failure to protect" theory applies to an employee who commits a criminal act against a patron, Louisiana's "unique opportunity" requirement in the context of negligent hiring,

training, and supervision (See Section III of this Memorandum Ruling) would be rendered meaningless. Here, Stevenson is an employee of Defendant. Therefore, the Court finds that this theory of liability does not apply in the current case. However, even if a reviewing Court finds that this theory is applicable, there is no genuine dispute of material fact as to whether Defendant breached its duty to protect its patrons from criminal activity.

The Supreme Court of Louisiana has adopted a balancing test "to be used in deciding whether a business owes a duty of care to protect its customers from the criminal acts of third parties." Simpson v. Dollar Tree Stores, Incorporated, 698 Fed.Appx. 188 (5th Cir. 2017) (quoting Posecai v. Wal-Mart Stores, Inc., 752 So.2d 762 (La. 11/30/99)). The existence and extent of the duty depends upon "the foreseeability of the crime risk on the defendant's property and the gravity of the risk." Id. "A very high degree of foreseeability is required to give rise to a duty to pose security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras . . . ." Id.

In this case, it is undisputed that an Alexandria police officer was on duty as a security guard at the Theatre at the time of the incident. Record Document 1-5 at 3. In fact, the security guard intervened in, and ended, the dispute between Mr. Brown and Stevenson. See Id.; see also Record Document 18-2 at 77. Additionally, it is undisputed that surveillance cameras were in place at the Theatre. See Record Documents 18-2 at 28-29. As such, the Court finds that there is no genuine dispute of material fact as to whether Defendant breached any duty it may have had to protect Plaintiffs from the criminal activity of third parties. Therefore, Defendant's Motion for Summary Judgment

(Record Document 17) as to the claims for Defendant's failure to protect from third party criminal activity is **GRANTED**.

**CONCLUSION**

For the reasons stated above,

Defendant's Motions for Summary Judgment (Record Documents 17 & 39) are hereby **GRANTED**, as there are no genuine disputes of material facts as to Plaintiff's Louisiana tort law claims against Defendant, including their claims for Defendant's vicarious liability, and Defendant is entitled to judgment as a matter of law. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 8th day of March, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT