**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ANTHONY T. BROWN, ET AL | CIVIL ACTION NO. 17-0798 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF ALEXANDRIA, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

**MEMORANDUM RULING**

Before the Court are Defendants the City of Alexandria ("City") and Mayor Jacques Roy ("Mayor Roy") Motion for Partial Summary Judgment (Record Document 43) under Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of Plaintiffs, Anthony and Bianca Brown's ("Browns" or "Plaintiffs"), federal claims. The Browns oppose summary judgment (Record Document 52). For the reasons stated in the instant Memorandum Ruling, Defendants' Motion for Partial Summary Judgment is hereby **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

The instant suit arises from an altercation at the movie theater on the night of May 21, 2016 in Alexandria, Louisiana. See Record Document 1-5 at 3. The altercation was between Mr. Stevenson ("Stevenson") and the Browns. See id; see also Record Document 18-3 at 1. On May 21, 2016, Plaintiffs attended a movie. See Record Document 1-5 at 3. Upon entering the theater, Stevenson approached Plaintiffs and began speaking to Ms. Brown. Mr. Brown went to the concession stand. See Record Document 18-1 at 52. After Stevenson and Ms. Brown finished their conversation, Ms. Brown went to the restroom. See id. At this time, Mr. Brown approached Stevenson and engaged him in conversation. See id. at 42 According to Mr. Brown's deposition, the purpose of this

Page **1** of **11**

conversation was to let Stevenson know that Mr. and Ms. Brown had been married for 18 years, and to ask Stevenson to acknowledge Mr. Brown's presence whenever he spoke to Ms. Brown in the future. See id. Plaintiffs then went to their movie.

After the movie ended, Plaintiffs began moving towards the theater's exit, but were "accosted" by Stevenson, who was standing in the doorway. Record Document 1-5 at 3. Stevenson "attempted to commence a conversation with Ms. Brown." Id. Stevenson told her that before the movie, Mr. Brown had accused them of having an affair. See Record Documents 18-1 at 58 & 18-2 at 65. Plaintiffs turned to walk away. See Record Document 1-5 at 3. Stevenson then "jumped in front of them" and became hostile. Id. Stevenson then pushed Mr. Brown and "commenced attacking him, causing a fight to break out between them." Id. Ms. Brown then yelled for help from the police officer, Officer Rennier ("Rennier") who was working security at the theater. See id.; see also Record Document 18-1 at 64.

Rennier intervened to break up the fight. See Record Document 43-3 at 10. Plaintiffs allege that Rennier engaged in excessive force and caused significant injuries to both of them during the course of his intervention. See Record Document 1-5 at 3 & 4. More specifically, Plaintiffs assert Rennier "arbitrarily slammed" Mr. Brown to the ground and "sat on his back using profanity." Id. at 3. Further, Rennier "struck Ms. Brown," and knocked her to the floor. Id. at 4; see also Record Document 18-1 at 65. Both Mr. and Ms. Brown assert significant injuries from this altercation. However, Mr. Brown alleges "no medical services were provided by the Alexandria Police Department," even after Mr. Brown indicated multiple times he was hurt. Record Document 1-5 at 4.

Plaintiffs allege federal and state constitutional claims pursuant to 28 U.S.C. § 1983 against Officer Rennier, the City of Alexandria, Mayor Roy, the Alexandria City Council, and the Alexandria Police Department. See id. at 4. The Court dismissed all claims against the Alexandria City Council and Alexandria Police Department as they are entities incapable of being sued. See Record Document 13. Plaintiffs also sued the theater for negligent hiring of Stevenson, but all claims against the theater were also dismissed. See Record Document 50.

The City and Mayor Roy filed the instant Motion for Partial Summary Judgment asserting Plaintiffs failed to provide any evidence demonstrating a § 1983 violation. See Record Document 43-1 at 13-20. Further, Mayor Roy asserts the defense of qualified immunity. See id. at 17-18. The Browns oppose the motion. See Record Document 52. Defendants replied to Plaintiffs' opposition. See Record Document 55.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Geoscan, Inc. of Texas v. Geotrace Techs., Inc., 226 F.3d 387, 390 (5th Cir. 2000).

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof [at trial]." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.

2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).

In reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Rogers v. Bromac Title Servs., L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence." Hathaway v. Bazanay, 507 F.3d 312, 319 (5th Cir. 2007) (internal citations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

II. **Analysis**

In their complaint, the Browns assert § 1983 Monell claims against the City of Alexandria and Mayor Roy for (1) excessive force; (2) deliberate indifference to Mr. Brown's medical needs; and (3) failing to adequately train the officer involved in the incident. See id. at 4. It is not clear from the complaint whether the Browns are suing Mayor Roy in his official or individual capacities in his § 1983 claims, so the Court will assume that the Browns are suing him in both capacities.

### A. The Browns' Federal Claims Against Mayor Roy in his Official Capacity and the City

A suit against a state or municipal officer in his or her official capacity is treated as a suit against the entity itself. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct.

3099, 3105 (1985). As such, a plaintiff must prove the elements necessary for a <u>Monell</u> municipal liability claim to prevail in an official capacity suit. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25, 112 S.Ct. 358, 361-62 (1991). Therefore, the analysis of claims against the City and Mayor Roy in his official capacity are identical.

    **i.    Excessive Force Claim**

Local government entities may not be held vicariously liable under § 1983. <u>See</u> <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658, 691 98 S.Ct. 2018, 2036 (1978). However, they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u>, 436 U.S. at 694, 98 S.Ct. at 2037-38.

To succeed on a <u>Monell</u> claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. <u>Rayborn v. Bossier Parish School Bd.</u>, 881 F.3d 409, 416-17 (5th Cir. 2018), (<u>citing</u> <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 247 (5th Cir. 2003)). Official policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick v. Thompson</u>, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359 (2011).

After reviewing Plaintiffs' complaint and opposition, it appears Plaintiffs are relying on the third category, or attempting to prove official policy through widespread practice. <u>See</u> Record Documents 1-5 & 52-2. Plaintiffs must therefore demonstrate that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well

settled as to constitute a custom that fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). Furthermore, Plaintiffs must also show "actual or constructive knowledge of such custom" by the municipality or the official who had policymaking authority. Id.

Plaintiffs' only evidence of this alleged custom derives from a previous civil suit filed against Officer Rennier and expert testimony regarding law enforcement standards generally. See Record Document 52-2 at 10-12. Plaintiffs allege an off-duty incident with Rennier, three other off-duty cops, and a private citizen serve as evidence of Rennier's violent propensity. See id. at 10. The alleged incident led to a simple battery conviction for Rennier and a civil suit filed against the city. See Record Document 43-3 at 22. This one incident from 20 years ago is simply not enough to demonstrate a "persistent and widespread practice" of city employees. Webster, 735 F.2d at 841; see also Adams v. City of Laredo, 08-165, 2011 WL 1988750, at *7 (S.D. Tex. May 19, 2011) (finding Plaintiff failed to establish a custom necessary for Monell liability with evidence that the officers involved had at least one prior excessive force complaint).

The Browns also presented evidence from John G. Peters, Jr., Ph.D. ("Peters"), who was offered as an expert in the field of law enforcement and correctional practices. See Record Document 52-5 at 2.[1] Peters observes, "[I]t appears from the tactics used by APD Captain Michael Rennier...that he was not trained on how to properly approach

---

[1] Defendants have filed a "Motion to Strike and/or in Limine" to strike Dr. Peters' report and opinions from consideration of the Motion for Summary Judgment. Record Document 56. For purposes of this motion, the Court will consider Dr. Peters' report and opinions. However, the Court notes it has significant doubts regarding Dr. Peters' methodology.

disabled individuals…"[2] See Record Document 52-5 at 4. Further, Peters notes he has not reviewed any of Alexandria Police Departments' ("APD") training records and is merely relying on information from the APD website. See id. Peters' opinion is simply inadequate to demonstrate a practice "so common and well settled as to constitute a custom that fairly represents municipal policy." Webster, 735 F.2d at 84. Rather, his report merely serves as his unsubstantiated opinion. Furthermore, the Fifth Circuit has made clear that "an expert's opinion should not be alone sufficient to establish constitutional 'fault' by a municipality in a case of alleged omissions, where no facts support the inference that the town's motives were contrary to constitutional standards." Stokes v. Bullins, 844 F.2d 269, 276 (5th Cir. 1988).

Viewing all facts and inferences in Plaintiffs' favor, the Court finds Plaintiffs have failed to provide evidence sufficient to indicate a "persistent and widespread practice" of excessive force. Therefore, the federal claims of excessive force must be **DISMISSED** against the City and Mayor Roy in his official capacity.

    **ii.**     **Deliberate Indifference Claim**

Plaintiffs also assert the City and Mayor Roy are in violation of § 1983 for "acting with deliberate indifference to Plaintiff's medical needs." See Record Document 1-5 at 5. Plaintiffs' only evidence of a policy or widespread practice or custom of deliberate indifference of medical needs is the expert testimony of Peters. See Record Document 52-2 at 17-18. Peters' bald opinion regarding deliberate indifference of medical needs is based solely on Mr. Brown's deposition. See Record Document 52-5 at 8. Again, this is

---

[2] Plaintiffs did not allege Mr. Brown had a disability in their complaint. The opposition to the motion for summary judgment mentions Mr. Brown's alleged disability, but because it was raised for the first time at summary judgment it will not be considered by this Court.

simply not enough to establish a "persistent and widespread custom" of the City or Mayor Roy to deny medical care. See Webster, 735 F.2d at 841. Furthermore, as noted above, expert testimony alone is insufficient to establish a custom or policy generally under Monell. See Stokes, 844 F.2d at 276. Thus, as Plaintiffs have failed to establish the first essential element for a Monell § 1983 claim—the presence of an official policy or custom—the claim of deliberate indifference for Plaintiffs' medical needs against the City and Mayor Roy in his official capacity must be **DISMISSED.**

### iii. Inadequate Hiring and Failing to Train Claims

Only in very limited circumstances may a municipality be held liable for a failure to train its police officers. See City of Canton v. Harris, 489 U.S. 378, 387 109 S.Ct. 1197, 1204 (1989). To succeed on such claims, Plaintiffs must "prove a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." Id. at 385, 109 S. Ct. at 1203. Upon proof of the direct causal link, Plaintiffs must then "establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998). The Supreme Court made clear the "deliberate indifference" standard will be difficult to satisfy: "Only when a failure to train reflects such a 'deliberate' or 'conscious' choice by a municipality…can a city be liable for such a failure under § 1983." City of Canton, 489 U.S. at 389, 109 S. Ct. at 1205.

Plaintiffs attempt to use the same evidence of Rennier's off-duty incident and Peters' expert testimony to establish a custom of inadequate hiring and failing to train on the part of the City and Mayor Roy. See Record Document 52-2 at 10-12. As noted in Parts i. and ii. *supra*, this evidence is inadequate to demonstrate an official policy or

custom required for Monell liability. However, even assuming Plaintiffs could prove a policy or custom, they cannot satisfy the "deliberate indifference" standard. The record is devoid of any evidence indicating a conscious or deliberate decision by the City or Mayor Roy to fail to provide training to Officer Rennier. See City of Canton, 489 U.S. at 389, 109 S.Ct. at 1205. Because Plaintiffs have failed to provide evidence necessary to demonstrate a widespread practice of inadequate hiring and failing to train APD officers the claim against the City and Mayor Roy must be **DISMISSED**.

### B. The Browns' Federal Claims Against Mayor Roy Individually

Section 1983 actions are often brought against persons acting under the color of state law in their individual capacity, but these persons are often protected from liability by qualified immunity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." Ashcroft v. Iqbal, 556 U.S. 662, 685, 129 S.Ct. 1937, 1953 (2009) (internal quotations and citations omitted). Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Keller v. Flemming, 930 F.3d 746 (5th Cir. 2019).

A plaintiff may only recover under § 1983 against defendants who were either personally involved in the alleged constitutional violation or whose acts are casually connected to the constitutional violation. See Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005). The record is devoid of any evidence that Mayor Roy was personally involved in this incident between Plaintiffs and Rennier, therefore, the only way Mayor Roy could be held personally liable is through supervisory liability.

When the plaintiff seeks to impose supervisory liability on a defendant public official in his individual capacity, "the plaintiff must show that: (1) the supervisor either

failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Thus, in a supervisory liability case, a plaintiff must demonstrate a genuine dispute of material fact as to each of these elements once the defendant has asserted a qualified immunity defense to survive a motion for summary judgment.

The Court finds no genuine dispute as to any of these elements as they relate to Mayor Roy. Plaintiffs provided no evidence that Mayor Roy had any supervisory or training authority over APD officers, including Officer Rennier. Rather, Plaintiffs only provided one statement regarding Mayor Roy and his defense of qualified immunity: "[A]s Dr. Peters' expert report shows, Mayor Roy failed to control an officer with a known propensity for violence, so he is not entitled to qualified immunity either." See Record Document 52-2 at 20. Peters' report alleges Mayor Roy, in conjunction with the Alexandria City Council and former Police Chief "created an organizational atmosphere that condoned unconstitutional, reckless, and dangerous behavior by the police officers." Record Document 52-5 at 4. However, Peters has no evidence to prove this and merely cites general theories regarding the importance of law enforcement culture, and the duty law enforcement administrators have over that culture. See id. at 4-5. Peters provides zero evidence of Roy's participation or creation of this "organizational atmosphere."

The Browns cannot demonstrate a genuine dispute as to (1) a "causal link" exists between Mayor Roy's failure to train or supervise Officer Rennier or (2) that Mayor Roy's failure to train or supervise Officer Rennier constituted "deliberate indifference." Estate of

Davis, 406 F.3d at 381. Plaintiffs cannot overcome Mayor Roy's qualified immunity defense absent a showing that Mayor Roy ever violated the Browns' rights. Therefore, the Browns' federal claims against Mayor Roy individual fail and must be **DISMISSED**.

## CONCLUSION

Defendants met their summary judgment burdens by negating at least one essential element of each of Browns' claims or by demonstrating that their claims were barred as a matter of law. As such, Defendants are entitled to judgment as a matter of law. Defendants' Motion for Partial Summary Judgment (Record Document 43) is therefore **GRANTED**. All of the Browns' federal claims against the City of Alexandria and Mayor Roy are hereby **DISMISSED WITH PREJUDICE**.

The Court continues to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims against Defendants, as the state law analysis should substantially track the federal law analysis.

An order consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 30th day of September 2019.

*[signature]*
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT